UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

INTERNATIONAL TRADING AND )
INDUSTRIAL INVESTMENT COMPANY )
(f/k/a INTERNATIONAL )
TRADING AND INVESTMENT COMPANY) )
Street No: 2, Industrial Area )
PO Box. 4546 )
Doha, Qatar )
                Petitioner, )
    v. )  C.A. No. _____
 )
DYNCORP AEROSPACE TECHNOLOGY, )
DYNCORP, )
DYNCORP TECHNICAL SERVICES, INC., )
DYNCORP TECHNICAL SERVICES LLC, and )
CSC APPLIED TECHNOLOGIES LLC, )
 )
                Respondents. )

---

**PETITION FOR CONFIRMATION OF
FOREIGN ARBITRAL AWARD**

Petitioner International Trading and Industrial Investment Company (formerly known as International Trading and Investment Company), by its undersigned attorneys, hereby petitions this Court pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207, for an Order:

(a) confirming a foreign arbitral Award rendered by an Arbitrator appointed by the International Court of Arbitration of the International Chamber of Commerce ("ICC"), and made at the place of arbitration in Paris, France, that (i) awarded Petitioner $1,107,764.95, with interest thereon at the rate of 5% per annum from May 24, 2006 until paid, on its claim for breach of contract; and (ii) awarded Petitioner $40,000.00 as reimbursement for amounts paid to the ICC for administering the arbitration and for the fees of the Arbitrator;

(b) directing the Clerk of the Court, pursuant to Rule 58 of the Federal Rules of Civil Procedure, to enter judgment thereon against Respondents DynCorp Aerospace Technology, DynCorp, DynCorp Technical Services, Inc., DynCorp Technical Services LLC, and CSC Applied Technologies LLC;

(c) awarding Petitioner ITIIC the costs of this action; and

(d) awarding Petitioner such other and further relief as the Court deems just and proper.

This Petition is supported by the Declaration of Christopher R. Hart ("Hart Declaration") and the exhibits thereto, and the Memorandum of Points and Authorities in Support of Petition for Confirmation of a Foreign Arbitral Award, which are filed contemporaneously with the Petition. References herein to exhibits are to the exhibits to the Hart Declaration.

ITIIC alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 9 U.S.C. §§ 201 and 203.

2. The United States is a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention") (codified at 9 U.S.C. §§ 201 et seq.).

3. France is a signatory to the Convention.

4. This Court has personal jurisdiction over the Respondents under D.C. Code § 13–334(a).

5. Venue is proper in this district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

6. Petitioner International Trading and Industrial Investment Company (formerly known as International Trading and Investment Company) ("ITIIC") is a company organized under the laws of the State of Qatar. *See* Agreement at Cl. 2, Ex. B. ITIIC was formerly known as International Trading and Investment Company. Petitioner is a party to the Agreement of July 17, 1998 (the "Agreement") that is the subject of the Award. *See* Agreement at Cl. 1, Ex. B.

7. Respondent DynCorp Aerospace Technology was, at the relevant times, an unincorporated divisional unit under Respondents DynCorp and DynCorp Technical Services, Inc., and a name under which these companies did business. *See* Exs. C, D, E & F.

8. Using the name "DynCorp Aerospace Technology," Respondents DynCorp and DynCorp Technical Services, Inc. did business with Petitioner and entered into the Agreement with it. In other litigation DynCorp has previously admitted responsibility for the contractual obligations of "DynCorp Aerospace Technology." *See* Exs. C, D, & E.

9. Moreover, in this case Respondents DynCorp and DynCorp Technical Services, Inc. exercised contractual rights belonging to DynCorp Aerospace Technology under the Agreement and reaped the benefits accruing to DynCorp Aerospace Technology under that Agreement by entering into contracts with the United States government. *See* Exs. F, G, H, I & J.

10. DynCorp and DynCorp Technical Services, Inc. are legally responsible for the obligations and liabilities of DynCorp Aerospace Technology under the Agreement and Award in this case and for all obligations incurred by, or through use of the business name, "DynCorp Aerospace Technology."

11. Respondent DynCorp is a company organized under the laws of the State of Delaware, is registered to do business in the District of Columbia, and regularly does business in the District of Columbia. *See* Exs. K, L.

12. Respondents DynCorp Technical Services, Inc., DynCorp Technical Services LLC, and CSC Applied Technologies LLC are, from the standpoint of legal responsibility and liability under the Agreement and the Award, the same legal entity.

13. Respondent DynCorp Technical Services, Inc. was, at relevant times, a company organized under the laws of the State of Delaware and regularly did business in the District of Columbia. *See* Ex. M, N. In 2000, DynCorp Technical Services, Inc. was succeeded by DynCorp Technical Services LLC. *See* Ex. O.

14. Respondent DynCorp Technical Services LLC is a company organized under the laws of the State of Delaware and regularly does business in the District of Columbia. *See* Ex. O. In 2000, it became the successor to DynCorp Technical Services, Inc. *See* Ex. M, O.

15. Respondent CSC Applied Technologies LLC is a company organized under the laws of the State of Delaware, is registered to do business in the District of Columbia, and regularly does business in the District of Columbia. In 2005, it became the successor to DynCorp Technical Services LLC. *See* Ex. P, Q, R, S, & T. CSC Applied Technologies LLC is legally responsible for the obligations and liabilities of DynCorp Technical Services, Inc., DynCorp Technical Services LLC, and DynCorp Aerospace Technology under the Agreement and Award in this case.

16. Alternatively, DynCorp and DynCorp Technical Services, Inc. were *alter egos* of DynCorp Aerospace Technology, were in an agency relationship with it, or were otherwise

4

vicariously liable for all obligations assumed using the business name DynCorp Aerospace Technology in connection with the Agreement and the Award.

17. For ease of reference, all of the Respondents will be referred to, collectively, as "DynCorp."

## FACTUAL BACKGROUND

A. **The Parties' Agreement of July 17, 1998.**

18. On July 17, 1998, DynCorp and DynCorp Technical Services, Inc., doing business as DynCorp Aerospace Technology, executed an Agreement with Petitioner ITIIC, effective July 20, 1998, under which ITIIC was appointed as service agent for the purpose of establishing, operating and maintaining a licensed branch office in the State of Qatar.

19. The Agreement was intended to facilitate DynCorp's business in Qatar, which involved providing security guard services in support of the United States Army pursuant to contracts awarded to it by the United States Government. *See* Agreement at Recital B, Cl. 2(A), Ex. B.

20. ITIIC's duties under the Agreement included assisting DynCorp in obtaining all licenses and permits required to establish and maintain a branch office; advising it regarding importing and exporting equipment, spares and stores; and advising and assisting it in dealings with government ministries, departments, and agencies.

21. As the Arbitrator found in the Award, the Agreement contemplated the establishment of a business relationship between the parties, and that ITIIC would assist DynCorp in obtaining and performing contracts to provide security services in Qatar. *See* Award at 25, 31, Ex. A.

22. Under Clause 6.1 of the Agreement and the annexed Schedule, entitled "Remuneration," ITIIC was to be paid "a remuneration equal to 3% of the gross Contract value

in respect of each contract being performed or to be performed in the State of Qatar and the territorial waters of Qatar awarded in Qatar by DynCorp customers." *See* Award at 2, Ex. A. As a result of the Agreement, over the following five years DynCorp concluded four contracts to provide security services in Qatar. *See id.* The total amount received by DynCorp pursuant to these contracts was more than $64.4 million. *See id.* at 28.

23. Clause 9.1 of the Agreement, entitled "Period and Termination," stated that

> without prejudice to the provisions of Clause 9.2, 9.3 and 9.4 hereof, this Agreement shall be for a period of sixty months from the date of signature and shall continue thereafter unless and until terminated by either party giving to the other not less than 90 (ninety) days prior notice expiring on or any time after the first anniversary of the date hereof.

*See* Agreement at Cl. 9.1, Ex. B; Award at 23, Ex. A.

24. By letter dated September 24, 2001, DynCorp (through a letter sent by DynCorp Technical Services, Inc.) purported to terminate the Agreement, effective December 23, 2001. *See* Ex. F. ITIIC disputed the validity of DynCorp's termination notice and contended that pursuant to Clause 9.1, the Agreement could not be terminated until after the expiration of the base period of sixty months, *i.e.*, until July 20, 2003.

**B.      The Arbitration Proceedings.**

25. On December 14, 2003, ITIIC filed a Request for Arbitration against DynCorp under the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC Rules"), pursuant to the dispute resolution provision of the Agreement (Clause 13.1), which states as follows:

> In case of any dispute arising in connection with the agreement, it shall be firmly settled under the rules of conciliation and arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.

*See* Agreement at Cl, 13.1, Ex. B.

26. In its Request for Arbitration, ITIIC alleged that DynCorp's purported termination of the Agreement by its September 24, 2001 letter constituted a breach of the Agreement. ITIIC further alleged that it had performed all requested services, had established and maintained DynCorp's branch in Qatar, had liaised with government departments on behalf of DynCorp, had obtained telephone and other facilities for DynCorp, had remained available to perform whatever services DynCorp requested, and had assisted DynCorp in expanding its business pursuant to the terms of the Agreement. As relief, ITIIC sought damages in an amount equal to the unpaid remuneration due under Clause 6.1 of the Agreement on contracts DynCorp had performed in Qatar during the base period of the contract (*i.e.*, from July 20, 1998 to July 20, 2003). *See* Award at 9, Ex. A.

27. On June 1, 2004, DynCorp filed an Answer in the arbitration, denying that it had breached the Agreement. *See* Award at 14, Ex. A. Subsequently, DynCorp filed a Counterclaim alleging breaches of the Agreement by ITIIC. *See* Award at 21, Ex. A.

28. At its session on February 20, 2004, the ICC Court decided that the matter should proceed in accordance with Article 6(2) of the ICC Rules before a sole Arbitrator, and fixed Paris, France, as the place of arbitration in accordance with Article 14(1) of the ICC Rules. *See* Ex. U. On April 16, 2004, the ICC Court appointed Michael Tueni as sole Arbitrator. *See* Ex. V.

29. On October 25, 2004, the parties and the Arbitrator accepted and signed the Terms of Reference, in accordance with Article 18 of the ICC Rules. *See* Terms of Reference, Ex. W. Section III.3 of the Terms of Reference stipulated, with regard to the "Place of Arbitration," as follows:

> The ICC International Court of Arbitration decided, on 20 February 2004, to fix Paris, France as the place of Arbitration.

7

*See* Terms of Reference at 6, Ex. W. Section V.4 of the Terms, with regard to the "Applicable substantive law and applicable procedural Rules," stated as follows:

> Clause 14.1 of the Agreement stipulates: "This agreement shall be governed and constructed and shall take effect in accordance with the laws of the State of Qatar."
>
> The Qatari Law shall apply to the substantive questions to be resolved, and the ICC Rules in force shall apply to the Arbitration procedure.

*Id.*

30. On April 12, 2005, the Arbitrator issued an Interim Award rejecting DynCorp's contention that the arbitral proceedings were in breach of the ICC Rules. He also denied DynCorp's request for security for costs. *See* Interim Award at 10–11, Ex. X.

31. From April 2005 through February 2006, the parties made submissions and provided documentary evidence to the Arbitrator concerning, *inter alia*, the various claims of contractual breaches and the calculation of damages. *See* Award at 5–8, Ex. A.

32. On February 27, 2006, a full hearing took place at the Arbitrator's office in Beirut, Lebanon, at which both parties made oral and written submissions. *See id.* at 8.

C. **The Arbitration Award.**

33. On May 29, 2006, the ICC Court notified the parties that the Arbitrator had issued a final Award dated May 24, 2006. *See* Ex. Y. The Award specified that it was made at the place of arbitration, Paris, France. *See* Award at 33, Ex. A.

34. In his Award, the Arbitrator upheld ITIIC's claim of breach of contract and determined that the Agreement could not be terminated until the expiration of the sixty-month base term of the Agreement, or July 20, 2003. Having considered both the Arabic and English versions of the Agreement, the Arbitrator decided:

> The Sole Arbitrator considers that the exact meaning of Clause 9.1 of the Agreement (and that is stated in both the Arabic and the English version) is that such Agreement shall be for a period of "**sixty months from the date of signature and shall continue thereafter**, unless and until terminated . . . ." *i.e.*, the initial term of the Agreement is 60 months and the Agreement will continue after the initial term until terminated by either party. During the initial term the Agreement may only be terminated for breach under Clause 9.2. Therefore, the initial term of the Agreement expires on 20 July 2003.
>
> After the initial term of sixty months, the Agreement may be terminated by a notice of 90 days expiring on or at any time after the first anniversary of the date on which the initial term has expired, (i.e., after July 2003).
>
> Therefore, the Sole Arbitrator finds that the Respondent's notice dated 24 September 2001 sent to the Claimant did not take immediate effect as the Agreement should be considered terminated only on the expiry of its initial term, i.e. on 20 July 2003, which also means that the Respondent's notice took effect only on such date.
>
> If the intention of any of the parties was to allow the other to terminate the Agreement as of the date of its first anniversary only, the Agreement would have been drafted and signed initially for a period of one year, renewable yearly. But upon signature of such Agreement, the intention of both parties was clear: it was initially drafted for a period of sixty months, and after sixty months, it was automatically renewable unless and until terminated by either party (by a prior notice).
>
> It is true that the final phase of Clause 9.1 introduces an apparent inconsistency, but this does not allow the Agreement to be interpreted as the Respondent suggests as (i) it is provided expressly that the notice provision can only come into effect after the expiry of the initial 60 month term (hence use of the work "thereafter") and (ii) notice after 60 months is also necessarily after the first 12 months of the contract. Hence Clause 9.1 can be applied in the way the Claimant suggests without resulting in any direct contradiction.

*Id.* at 23–24 (emphasis added).

       35. The Arbitrator concluded that DynCorp had therefore breached the Agreement by purporting to terminate it effective December 23, 2001, or before July 20, 2003. *Id.*

       36. The Arbitrator also rejected DynCorp's Counterclaims alleging breach of the Agreement by ITIIC. *Id.* at 33.

37. Turning to the damages due to ITIIC, the Arbitrator found that during the base contract period (from July 20, 1998 to July 20, 2003), DynCorp had concluded four contracts as a result of the Agreement and ITIIC's actions in establishing a branch office for DynCorp in Qatar:

- The first SGFS contract (No. DASA – 04 – 97 – C – 2002).
- The second SGFS contract (No. DASA – 04 – 2 – C – 0005).
- The third SGFS contract (No. DABM – 09 – 03 – C – 0014).
- The WRM contract (No. F 44650 – 00 – C0006).

*Id.* at 26.

38. Applying Clause 6.1 of the Agreement and the remuneration formula of 3% of the gross contract value, and giving DynCorp credit for amounts already paid to ITIIC, the Arbitrator found that the net amount due ITIIC was $1,107,764.95. *Id.* at 29.

39. The Arbitrator further determined that interest at the rate of 5% per annum should accrue on the amounts due from the date of issuance of the Award until the date of effective payment by DynCorp to ITIIC. *Id.* In addition, the Arbitrator found that DynCorp should bear all of the costs of the arbitration and should therefore reimburse ITIIC the sum of $40,000, which represented the amount it had paid to the ICC as its share of the cost of administering the arbitration and the Arbitrator's fees. *Id.* at 33.

40. The total amount due to ITIIC pursuant to the Award was therefore $1,147,764.95 (excluding interest), as follows:

| | |
|---|---|
| Due per Agreement: | $1,107,764.95 |
| Interest on above: | rate of 5% per annum from May 24, 2006 until principal paid in full |

      Reimbursement for ICC Costs:      $   40,000.00

      Total      $1,147,764.95 (excluding interest)

*Id.* at 29.

41. Because DynCorp has refused to pay ITIIC the amounts due pursuant to the Award, the total amount owing and due to ITIIC under the Award, with accrued interest, is $1,278,268.97 as of the date of this Petition.

## REQUEST FOR CONFIRMATION OF ARBITRAL AWARD

42. The Arbitrator appointed by ICC International Court of Arbitration rendered a final and binding Award in Petitioner's favor.

43. Section 207 of the Federal Arbitration Act provides that confirmation of a foreign arbitral award is mandatory, unless the court finds that one of the grounds specified in the New York Convention for non-recognition or non-enforcement of the award is present:

> The court <u>shall confirm the award</u> unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added); *see also* United Nations Conference of International Commercial Arbitration's Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, at art. V, *reprinted at* 9 U.S.C. § 201.

44. Article IV of the New York Convention provides the requirements for enforcement of a foreign arbitral award:

> To obtain the recognition and enforcement [of a foreign arbitral award], the party applying for recognition and enforcement shall, at the time of the application, supply:
>
> (a) The duly authenticated original award or a duly certified copy thereof;

>   (b) The original agreement [made by the parties to submit to arbitration] or a duly certified copy thereof.

Convention, 21 U.S.T. 2517, art. IV(1)(a)–(b).

45. A copy of the Award that has been duly certified by the ICC Court is attached to this Petition. *See* Award, Ex. A.

46. A copy of the Agreement containing the clause whereby the parties agreed to submit their disputes to arbitration is also attached to this Petition. *See* Agreement at Cl. 13.1, Ex. B.

WHEREFORE, Petitioner ITIIC moves this Court for an Order:

(a) confirming the foreign arbitral Award rendered by the Arbitrator appointed by the ICC International Court of Arbitration and made at the place of arbitration in Paris, France, that (i) awarded Petitioner $1,107,764.95, with interest thereon at the rate of 5% per annum from May 24, 2006 until paid, on its claim for breach of contract; and (ii) awarded Petitioner $40,000.00 as reimbursement for amounts paid to the ICC for administering the arbitration and for the fees of the Arbitrator;

(b) directing the Clerk of the Court, pursuant to Rule 58 of the Federal Rules of Civil Procedure, to enter judgment thereon against Respondents DynCorp Aerospace Technology, DynCorp, DynCorp Technical Services, Inc., DynCorp Technical Services LLC, and CSC Applied Technologies LLC, as stated in the proposed Order;

(c) awarding Petitioner ITIIC the costs of this action; and

(d) awarding Petitioner such other and further relief as the Court deems just and proper.

## **REQUEST FOR HEARING**

Pursuant to Local Civil Rule 7(f), Petitioner requests an oral hearing on this Petition.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: April 30, 2009        By: /s/ John J. Buckley, Jr.
                             John J. Buckley, Jr. (D.C. Bar No. 925081)
                             Christopher R. Hart (D.C. Bar No. 486577)
                             725 Twelfth Street, N.W.
                             Washington, D.C. 20005
                             (202) 434-5051
                             jbuckley@wc.com
                             chart@wc.com

*Attorneys for Petitioner*
*International Trading and Industrial Investment Company*