# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
INTERNATIONAL TRADING AND               )
INDUSTRIAL INVESTMENT                    )
COMPANY (f/k/a/ INTERNATIONAL           )
TRADING AND INVESTMENT                  )
COMPANY),                               )
                                        )
    Petitioner,     )
                                        )
  v.                          )  Civil Action No. 09-791 (RBW)
                                        )
DYNCORP AEROSPACE                       )
TECHNOLOGY et al.,                      )
                                        )
    Respondents.    )
_____)


## MEMORANDUM OPINION

  Currently before the Court is an amended petition filed by petitioner International

Trading and Industrial Investment Company, formerly known as International Trading and

Investment Company ("International Trading"), to confirm an arbitral award (the "Award")

rendered in its favor and against respondents DynCorp Aerospace Technology and its affiliated

companies under the Federal Arbitration Act, 9 U.S.C. § 207 (2000) (the "FAA"),[1] and the

---

[1] The named respondents in this case are (1) DynCorp Aerospace Technology, "an unincorporated divisional unit under . . . DynCorp and/or DynCorp Technical Services, Inc., and a name under which DynCorp, DynCorp Technical Services, Inc., DynCorp Technical Services LLC, and DynCorp International LLC did business," Am. Pet. ¶ 7; (2) DynCorp, "a company organized under the laws of the State of Delaware" that is also "registered to do business in the District of Columbia[] and regularly does business in the District of Columbia," id. ¶ 14; (3) Dyncorp Technical Services, Inc., "a company organized under the laws of the State of Delaware," and a company that "regularly did business in the District of Columbia," id. ¶ 16; (4) Dyncorp Technical Services LLC, "a company organized under the laws of the State of Delaware" that "regularly does business in the District of Columbia," and is "the successor to DynCorp Technical Services, Inc.," id. ¶ 17; (5) CSC Applied Technologies LLC, "a company organized under the laws of the State of Delaware" that "regularly does business in the District of Columbia," and is "the successor to DynCorp Technical Services LLC," id. ¶ 18; and (6) Dyncorp International LLC, a company "doing business under the name of DynCorp Aerospace Technology," and "who participated as a party to the arbitration that resulted in the Award and used the name 'DynCorp Aerospace Technology,'" id. ¶ 19. For ease of reference, the Court will refer to all the defendants collectively as "DynCorp."

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, underline available at 1970 WL 104417 (the "New York Convention" or the "Convention"), which was ratified by Congress and codified at 9 U.S.C. §§ 201-08 (2000). Amended Petition for Confirmation of Foreign Arbitral Award (the "Am. Pet.") at 1. On December 1, 2010, the Court held a hearing on the merits of International Trading's petition, at which time the Court issued an oral ruling granting the petition and informed the parties that it would issue a short order thereafter. Upon further reflection, however, the Court believes that the issues presented in this case compel a more thorough written analysis and explanation regarding the Court's rulings, and this memorandum opinion reflects the Court's efforts in that regard.[2]

## I. Background

The following facts in this case are undisputed unless otherwise noted. "DynCorp . . . is an American company that . . . provides logistical support and security services to the [United States] Armed Forces in Qatar." Resp'ts' Opp'n at 3. On July 17, 1998, DynCorp entered into an agreement (the "Agreement" or "1998 Agreement") with International Trading, "under which [International Trading] was appointed as [a] service agent for the purpose of establishing, operating[,] and maintaining a licensed branch office [for DynCorp] in the State of Qatar." Am.

---

[2] In addition to the petitioner's amended petition, the Court considered the following documents in reaching its decision: (1) the Memorandum of Points and Authorities in Support of Amended Petition for Confirmation of Foreign Arbitral Award (the "Pet'r's Mem."); (2) the Memorandum of Points and Authorities in Opposition to Petitioner's Amended Petition for Confirmation of Foreign Arbitral Award and in Support of Respondents' Cross-Motion for an Order Denying Confirmation of the Award and Dismissing the Action and to Stay the Proceedings in the Alternative (the "Resp'ts' Opp'n"); (3) the Petitioner's Consolidated Memorandum in Reply to Respondents' Opposition to Petitioner's Amended Petition for Confirmation of Foreign Arbitral Award and in Opposition to Respondents' Cross Motion for an Order Denying Confirmation of the Award and Dismissing the Action and to Stay the Proceedings in the Alternative (the "Pet'r's Reply"); (4) the Reply Memorandum of Points and Authorities in Support of Respondents' Cross-Motion for an Order Denying Confirmation of the Award and Dismissing the Action and to Stay the Proceedings in the Alternative; (5) the Petitioner's Supplemental Memorandum of Significance of Paris Court of Appeal's Ruling of November 4, 2010 (the "Pet'r's Supp. Mem."); and (6) the Respondents' Supplemental Memorandum Regarding the Outcome of the French Action to Vacate the Arbitral the Award.

Pet. ¶ 24. International Trading's specific "duties under the Agreement included assisting DynCorp in obtaining all licenses and permits required to establish a branch office; advising it regarding importing and exporting equipment, spares[,] and stores; and advising and assisting it in dealings with government ministries, departments, and agencies," id. ¶ 26, so that ultimately DynCorp could "obtain[] . . . contracts to provide security services in Qatar," id. ¶ 27. The Agreement was written in both Arabic and English, Resp'ts' Opp'n at 4; Pet'r's Reply at 11, with the Arabic version controlling in the event of a conflict between the two versions, although consideration must be given to the English Terms as well, see Resp'ts' Opp'n, Ex. A (the 1998 Agreement) at 19.

The duration of the contract was governed by Section 9.1, which stated the following:

> [T]his Agreement shall be for a period of [s]ixty months from the date of signature and shall continue thereafter unless and until terminated by either party giving to the other not less than 90 . . . days prior notice expiring on or any time after the first anniversary of the date hereof.

Id., Ex. A (the 1998 Agreement) at 12. On September 24, 2001, DynCorp sent a letter to International Trading evincing its intent to terminate the agreement on December 23, 2001. Am. Pet. ¶ 30. International Trading disputed DynCorp's ability to terminate the agreement because it believed that "the Agreement could not be terminated until after the expiration of the base period of sixty months," which would not have been until July 20, 2003. Id. DynCorp's position was that "the maximum term of the Agreement was sixty months, and that either party could terminate [the Agreement] upon ninety days notice one year after the . . . Agreement was signed." Resp'ts' Opp'n at 5. Unable to resolve this dispute on their own, International Trading

initiated arbitration proceedings before the International Chamber of Commerce (the "ICC") under Section 13.1 of the Agreement.[3] Am. Pet. ¶ 31.

Pursuant to the ICC Rules, the ICC selected Paris, France as the site for the arbitration, id. ¶ 34, to which neither party objected, see id. ¶ 35. The parties also agreed that Qatari law governed the resolution of any substantive questions in the case, and that the ICC Rules would apply to any procedural issues that arose during the proceedings. Id. On May 29, 2006, the arbitrator issued a written decision in which he concluded that DynCorp breached the Agreement because Section 9.1 required the Agreement to remain in effect "for a period of 'sixty months from the date of signature and shall continue thereafter, unless and until terminated,' i.e., the initial term of the Agreement is 60 months and the Agreement will continue after the initial term until terminated by either party," Pet'r's Mem., Ex. A (May 29, 2006 Arbitral Award ("the Award")) at 23 (emphasis omitted in part), and DynCorp had announced its intention to terminate the agreement prior to that date, Am. Pet. ¶ 41. The arbitrator rejected DynCorp's position to the contrary, noting that

> [i]f the intention of any of the parties was to allow the other to terminate the Agreement as of the date of its first anniversary only, the Agreement would have been drafted and signed initially for a period of one year, renewable yearly. But, upon signature of such Agreement, the intention of both parties was clear: it was initially drafted for a period of sixty months, and after sixty months, it was automatically renewable unless and until terminated by either party (by a prior notice).

---

[3] The English translation of Section 13.1 states the following:

> In case of any dispute arising in connection with this agreement, it shall be finally settled under the rules of conciliation and arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.

Although the exact wording of the Arabic version of Section 13.1 is unclear from the parties' submissions, the parties do agree that the Arabic version does not contain the word "finally." Pet'r's Reply at 12; see Resp'ts' Opp'n at 6 ("[W]hile the English version [of Section 13.1] states that any dispute will be 'finally settled' under the rules of the . . . []ICC[], the controlling Arabic version of Section 13.1 contains no such statement or equivalent language."). As explained below, DynCorp argues that the omission of this language is legally significant. See infra at 10.

Pet'r's Mem., Ex. A (Award) at 24. As a result of the breach, the arbitrator concluded that International Trading was entitled to $1,107,764.95 for damages, Am. Pet. ¶ 45, $40,000 for costs, and interest of 5% per annum, id. ¶ 46.

On July 23, 2006, DynCorp pursued a stay of the Award before the Qatari Court of First Instance, arguing that "the [a]rbitration suffered from procedural defects," but was denied relief, Resp'ts' Opp'n at 8. DynCorp then appealed to the Qatari Court of Appeal, which concluded that the dispute "was resolved on correct, suitable, and accepted . . . law," id., Ex. D (Decision of Qatari Court of Appeal) at 12-13, but while the court upheld the arbitrator's award of damages and costs, it vacated the award of 5% interest, Resp'ts' Opp'n at 9. Soon thereafter, DynCorp appealed to the Qatari Court of Cassation, which is the court of last resort in the State of Qatar. Id. After consideration of the matter, the Court of Cassation concluded "that the arbitrator failed to follow Qatari law by improperly interpreting the 1998 Agreement in light of the parties' intentions." Id. at 10. The Court of Cassation found that the arbitrator's interpretation of the Agreement "goes against the apparent meaning of the contract conditions," and that the arbitrator's reading of the Agreement was a "misinterpretation of facts," as well as "error [regarding] the implementation of the law." Id. According to DynCorp, International Trading did not object to jurisdiction before any of the Qatari tribunals and voluntarily participated in the proceedings. See id. at 8-10.

On April 30, 2009, International Trading filed its petition in this Court, which it later amended on May 22, 2009, requesting that the Court confirm the Award pursuant to 9 U.S.C. § 207, as well as Article IV of the New York Convention. Am. Pet. at 1. In response, DynCorp moved on July 31, 2009, to have the Court deny confirmation of the Award, arguing that the Court of Cassation "was a valid authority to set aside the Award," and that in any event,

recognition of the Award should be denied "under Chapter 2 of the FAA."[4] Resp'ts' Opp'n at 1. Because DynCorp also initiated proceedings before the courts of France to set aside the Award on the same day it filed its cross-motion in this Court, DynCorp also requested a stay of the proceedings under Article V(1)(e) of the New York Convention, id., which states that where "an application for the setting aside . . . of [an] award has been made to a competent authority referred to in Article V(1)(e), the authority before which the award is sought be relied upon may . . . adjourn the decision." The Court denied the motion for a stay without prejudice on July 28, 2010, "in light of the parties' agreement that the motion should be held in abeyance pending resolution of" the matter before the French courts. Order, Int'l Trading and Indust. Invest. Co. v. DynCorp Aerospace Tech., Civil Action No. 09-791 (RBW) at 1. On November 4, 2010, the Paris Court of Appeal rejected DynCorp's action to set aside the Award, Pet'r's Supp. Mem. at 1, and subsequently, at the December 1, 2010 hearing, this Court entertained the parties' arguments as to whether the Award should be confirmed.

## II.     Standard of Review

Pursuant to 9 U.S.C. § 207, the Court is required to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." Those specified grounds can be found under Article V of the Convention. Specifically, Article V(1) authorizes the Court to deny confirmation of the arbitral award under the following circumstances:

---

[4] Chapter 2 of the FAA (i.e., 9 U.S.C. §§ 201-08) applies to arbitral awards falling under the New York Convention, see 9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."), while Chapter 1 of the FAA applies to arbitral awards issued, inter alia, "among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia," 9 U.S.C. §§ 1-2, as well as to awards falling under Chapter 2, "to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States," 9 U.S.C. § 208.

(a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Furthermore, Article V(2) of the Convention provides the Court with two additional grounds for denying recognition of an arbitral award:

(a) The subject matter of the difference is not capable of settlement by arbitration under [United States] law . . . ; or

(b) The recognition or enforcement of the award would be contrary to the public policy of [the United States].

As one federal circuit court has observed, "[t]here is now considerable case[]law holding that . . . the grounds for relief enumerated in Article V of the Convention are the only grounds available for [denying recognition or enforcement] of a [foreign] arbitral award." Yusef Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) (emphasis added) (citing M & C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 (6th Cir. 1996); Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial, 745 F. Supp. 172, 181-82

(S.D.N.Y. 1990); Brandeis Intsel Ltd. v. Calabrian Chems Corp., 656 F. Supp. 160, 167 (S.D.N.Y. 1987); and Albert Jan van den Berg, The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation 265 (1981)); see also TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting Yusuf, 126 F.3d at 23) (concluding that where an enforcement action is brought in a jurisdiction outside of where the arbitral award was rendered, "the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention").  Given that the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature.  See, e.g., Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.").  "[T]he showing required to avoid summary confirmation is high," Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987), and the burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation, Imperial Ethiopian Gov't v. Baruch-Foster Corp., 535 F.2d 334, 336 (5th Cir. 1976); see also New York Convention, art. V ("Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes [proof] to the competent authority where the recognition and enforcement is sought . . . .").

The Court also must remain mindful of the principle that "judicial review of arbitral awards is extremely limited," and that this Court "do[es] not sit to hear claims of factual or legal error by an arbitrator" in the same manner that an appeals court would review the decision of a lower court.  Teamsters Local Union No. 61 v. United Parcel Serv., Inc., 272 F.3d 600, 604

(D.C. Cir. 2001) (quoting <u>Kanuth v. Prescott, Ball & Turben, Inc.</u>, 949 F.2d 1175, 1178 (D.C. Cir. 1991)).  In fact, careful scrutiny of an arbitrator's decision would frustrate the FAA's "emphatic federal policy in favor of arbitral dispute resolution," <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 631 (1985) (internal citation omitted)—a policy that "applies with special force in the field of international commerce," <u>id.</u>—by "undermining the goals of arbitration, namely, settling disputes efficiently and avoiding lengthy and expensive litigation," <u>LaPrade v. Kidder, Peabody & Co.</u>, 94 F. Supp. 2d 2, 4-5 (D.D.C. 2000) (Sullivan, J.), <u>aff'd</u> 246 F.3d 702 (D.C. Cir. 2001).  Instead, "a court must confirm an arbitration award where some colorable support for the award can be gleaned from the record." <u>Id.</u> at 4.

### III.    Legal Analysis

The overarching issue before the Court is whether the Award should be confirmed under 9 U.S.C. § 207 and Article IV of the New York Convention.  By the Court's assessment, DynCorp's arguments in support of its cross-motion to deny confirmation of the Award can be distilled into two parts; first, that the Award should not be confirmed by the Court because the Qatari Court of Cassation set aside the Award, and International Trading is estopped from challenging the competency of that court "to set aside the Award within the meaning of Article V(1)(e) of the New York Convention," Resp'ts' Opp'n at 14, and second, the Court should deny recognition of the Award because the arbitrator acted with manifest disregard of the law, <u>id.</u> at 17.  The Court addresses each of these contentions below.

1.  <u>Competency of Qatari Court of Cassation to Set Aside the Award</u>

DynCorp argues that the Court should refuse to recognize the Award under Article V(1)(e) of the New York Convention, which states that an arbitral award need not be confirmed if, <u>inter alia</u>, "[t]he award . . . has been set aside or suspended by a competent authority of the

9

country in which, or under the law of which, that award was made." DynCorp acknowledges in its opposition memorandum that, as a general matter, a "competent authority," as that term is used under Article V(1)(e), is one located within the country where the arbitration commenced, Resp'ts' Opp'n at 13, and thus had the present case been "a typical enforcement action, the decision of the Qatari Court of Cassation to set aside the Award would not restrict this Court's ability to enforce the Award," id. at 14, because the seat of the arbitration was Paris, France, id. at 13. DynCorp argues, however, that the amended petition now before the Court does not involve a "typical enforcement action," because International Trading assented to judicial review by the Qatari courts. In support of its position, DynCorp argues that International Trading, in "draft[ing] the controlling Arabic version of the arbitration clause[,] . . . . failed to specify . . . that the Award was to be final and binding," and thereby understood that the non-prevailing party (in this case, DynCorp) could "appeal the merits of the Award to the Qatari courts under Qatari law." Id. at 14. DynCorp further asserts that International Trading "consented to the jurisdiction of the Qatari courts," by "voluntarily participat[ing] in the proceedings before those courts without ever objecting," id. at 15 (citing Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas, 364 F.3d 274 (5th Cir. 2004)), and is now "estopped from contesting that the Qatari Court of Cassation became a . . . competent authority to set aside the Award within the meaning of Article V(1)(e) of the New York Convention," id. at 15-16. DynCorp contends that because International Trading's actions have rendered the Qatari Court of Cassation a "competent authority" under Article V(1)(e), the principle of international comity "requires this Court to respect the Qatari Court of Cassation's conclusions regarding the proper application of Qatari law to the underlying dispute." Id. at 16.

To be sure, the Court agrees with DynCorp's acknowledgement that in a "typical enforcement action," the Qatari Court of Cassation's ruling would have no impact on this Court's analysis of whether confirmation of the Award should be denied in this instance. The plain language of Article V(1)(e) is unambiguous; for the Court to refuse to confirm the Award, it would have to find not only that the Award was set aside by a "competent authority," but also that the "competent authority" was located in "the country in which, or under the [arbitral] law of which, that award was made." New York Convention, art. V(1)(e). Neither party disputes that the seat of the arbitration was Paris, France, or that the arbitration was governed by the ICC Rules. <u>See</u> Am. Pet. ¶ 35 (quoting Pet'r's Mem., Ex. W (Terms of Reference) at 6) (agreement by the parties that Qatari law governs questions of substantive law, while the ICC Rules "shall apply to the [a]rbitration procedure"). Thus, the only competent tribunals empowered under the New York Convention to set aside the Award are those located in France, not Qatar.

DynCorp's efforts to distinguish this case from a standard confirmation proceeding is unavailing. First, the terms of the Agreement belie any suggestion that the Award issued by the arbitrator was non-binding. The arbitration clause contained in both the English and Arabic versions of the Agreement provide that "any dispute arising in connection with this agreement" is to be resolved "under the rules . . . of the [ICC]."[5] Resp'ts' Opp'n at 6 (quoting Am. Pet, Ex. 2

---

[5] International Trading asserts that DynCorp, in its opposition memorandum, took the position that "the word 'finally' does not appear before the word 'settled,' so that the Arabic version [of the Agreement] simply says that any dispute 'shall be settled' under the ICC Rules of Arbitration." Pet'r's Reply at 11. At the December 1, 2010 hearing, International Trading argued that the word "finally" is superfluous because it is merely an affirmation of the verb "settled," and that the word "settled" by itself connotes finality.

The Court agrees with International Trading that if the Arabic version of the Agreement contains the word "settled," then that alone is sufficient to show that the parties intended to "resolve" the dispute "conclusively." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/settled (last visited Jan. 21. 2011). The Court, however, is not convinced that DynCorp has actually conceded the presence of the word "settled" in the Arabic translation of the arbitration clause. DynCorp's position is that "while the English version of [the] arbitration clause states that any dispute will be 'finally settled' under the [ICC] rules . . . the controlling Arabic version . . . contains <u>no such statement or equivalent language</u>." Resp'ts' Opp'n at 6 (emphasis added). In other words,
(continued . . .)

(the 1998 Agreement) ¶ 13.1).  Furthermore, the ICC rules that were in effect at the time the parties entered into the Agreement stated that "[e]very Award shall be binding on the parties," and that "the parties . . . shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made."  Pet'r's Reply, Ex. KK (ICC Rules, effective January 1, 2008 (the "ICC Rules")), art. 28(6); see also id., Ex. KK (ICC Rules), art. 24(1) ("The time limit within which the Arbitral Tribunal must render its <u>final</u> [a]ward is six months." (emphasis added)).  Thus, even assuming that Qatari law provides for judicial review of arbitration awards that are non-binding, that law has no application here because the parties, by agreeing to be governed by the ICC rules, intended the Award to be final and binding.[6]

Second, DynCorp's contention that International Trading consented to the Qatari courts to serve as "competent authorit[ies]" under Article V(1)(e) of the New York Convention, Resp'ts' Opp'n at 15-16, does nothing to influence the Court's construction of that provision. Whether a tribunal is "competent" under Article V(1)(e) to entertain an action to set aside an arbitral award is an inquiry that goes to that forum's subject-matter jurisdiction to hear a case. See <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 316 (2006) ("Subject-matter jurisdiction . . .

_____

(. . . continued)

DynCorp appears to be arguing that the arbitration clause does not contain both the words "finally" and "settled." And, because neither party has provided an English translation of the Arabic version, the Court is unable to determine whether there is any merit to International Trading's argument.  Regardless, as the Court discusses below, the parties' incorporation of the ICC rules into the Agreement is sufficient to support a finding that the Award was intended by the parties to be final and binding.

[6] It is the Court's view that under the terms of the Agreement, it is the role of the arbitrator, and not the Court, to resolve the dispute over whether the Award issued by the arbitrator is a final and binding award.  See Am. Pet., Ex. 2 (the 1998 Agreement) ¶ 13.1 ("In case of <u>any</u> dispute in connection with the [A]greement, it shall be . . . settled . . . by one or more arbitrators appointed in accordance with [the ICC] rules." (emphasis added)).  However, neither party has sought to compel arbitration of this discrete matter; to the contrary, the parties have argued the merits of this issue to the Court.  See Resp'ts' Opp'n at 14-15; Pet'r's Reply at 4-6, 11-15.  Accordingly, the Court finds it appropriate to resolve this matter, as both sides have waived the right to compel arbitration on this issue.  Cf. <u>Khan v. Parsons Global Serv., Ltd.</u>, 521 F.3d 421, 425 (D.C. Cir. 2008) (quoting <u>Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.</u>, 821 F.2d 772, 774-75 (D.C. Cir. 1987)) (finding that "a party may waive its right to arbitration by acting 'inconsistently with the arbitration right,'" and that "'one example of [such] conduct . . . is active participation in a lawsuit'").

concerns a court's competence to adjudicate a particular category of cases . . . ."); Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp., 512 F.3d 742, 747 (5th Cir. 2008) (holding that courts sitting in a country outside the seat of the arbitration "lack[] subject[-]matter jurisdiction over claims seeking to vacate, set aside, or modify a foreign arbitral award").  And, it is axiomatic that parties cannot confer subject-matter jurisdiction on a tribunal by way of consent. See, e.g., Gosa v. Mayden, 413 U.S. 665, 707 (1973) (Marshall, J., dissenting) ("One of the most basic principles of our jurisprudence is that subject-matter jurisdiction cannot be conferred upon a court by consent of the parties."); American Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by . . . prior action or consent of the parties.").  Even assuming that International Trading agreed to the jurisdiction of the Qatari courts by voluntarily participating in the proceedings before those tribunals, that consent has no binding effect on this Court; rather, it is this Court's duty to determine whether the Qatari courts are "competent authorit[ies]" within the meaning of Article V(1)(e)  Cf. Sabre Technologies, L.P. v. TSM Skyline Exhibits, Inc., Civil Action No. H-08-1815, 2008 WL 4330897, at *4 n.21 (S.D. Tex. Sept. 18, 2008) (citing Gasch v. Hartford Accident & Ins. Co., 491 F.3d 278, 281 (5th Cir. 2007), and Overton v. City of Austin, 748 F.2d 941, 957 n.19 (5th Cir. 1984)) ("Subject[-]matter jurisdiction is an issue of law, and a court is not bound to accept stipulations of law by parties to litigation." (internal citation and quotation marks omitted)).  As discussed above, the plain language of Article V(1)(e), as applied to the facts of this case, provides the courts of France, and not Qatar, with the authority to set aside the Award under the New York Convention.

DynCorp's reliance on Karaha Bodas to support its estoppel argument is misplaced.  The main issue confronting the Fifth Circuit in Karaha Bodas was whether a Swiss court or an

Indonesian tribunal had jurisdiction to vacate an arbitral award under Article V(1)(e). <u>Karaha Bodas</u>, 364 F.3d at 289-90. The appellee in <u>Karaha Bodas</u> had taken the position in the arbitration proceeding that Swiss arbitral law applied to the dispute, <u>id.</u> at 293, but "[f]or the first time . . . in the district court," the appellee argued "that Indonesian, not Swiss, procedural law had applied to the arbitration," <u>id.</u> at 289, because the contracts at issue "refer[red] to certain Indonesian Civil Procedure Rules," <u>id.</u> at 290. The Fifth Circuit rejected this argument, however, reasoning that the appellee's "previous arguments that Swiss arbitral law applied" to the dispute was "strong[] evidence [of] <u>the parties' contractual intent</u>," <u>id.</u> at 293 (emphasis added), and thus the appellee was estopped from asserting that Indonesian arbitral law governed the dispute, <u>id.</u> at 294.

And therein lies the distinction between <u>Karahas Bodas</u> and this case. The issue of whether the parties intended for Swiss or Indonesian arbitral law to govern the dispute at issue in that case was a matter of contract interpretation, which raised a factual question. <u>See, e.g.</u>, <u>Flynn v. Dick Corp.</u>, 481 F.3d 824, 831 (D.C. Cir. 2007) ("[T]he interpretation of ambiguous contract language . . . is a question of fact . . . ."). In this case, however, the parties both agree that (1) the seat of the arbitration was Paris, France; and (2) that the arbitration was governed by the ICC rules. Thus, even assuming that International Trading consented to the jurisdiction of the Qatari courts by voluntary participating in the judicial proceedings there, the question remains whether the Qatari courts, under the facts of this case, were "competent authorit[ies]" as that phrase is used in Article V(1)(e) of the New York Convention, which raises a pure question of law that is within the province of this Court to decide, without fidelity to any consent or stipulations by the parties. <u>See</u> <u>supra</u> p. 12-13. <u>Karahas Bodas</u>, therefore, is inapposite.

As for DynCorp's invocation of comity principles, that argument has been effectively rendered moot by the Court's conclusions. It is true that "res judicata effect has . . . traditionally been afforded foreign country judgments entitled to recognition consistently with principles of comity." Guinness PLC v. Ward, 955 F.2d 875, 893 n.14 (4th Cir. 1992). But affording comity to foreign judgments is not mandatory, see Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Tech., 369 F.3d 645, 654 (2d Cir. 2004) ("United States courts may choose to give res judicata effect to foreign judgments on the basis of comity, but are not obliged to do so" (internal quotation marks omitted)); rather, "[c]omity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state . . . will not be violated." Cunard S.S. Co. v. Salen Reefer Serv. AB, 773 F.2d 452, 457 (2d Cir. 1985). Here, the Qatari Court of Cassation was not a "court of competent jurisdiction" because it lacked the authority under the New York Convention to set aside the Award. See supra at 10-11. Thus, the decision rendered by that tribunal is not entitled to deference under principles of comity.

In sum, DynCorp's efforts to distinguish this case from a "typical enforcement proceeding" falls flat. The terms of the Agreement demonstrate a clear and unambiguous intention by the parties to have all disputes arising from the Agreement resolved by binding arbitration and without resort to appeals before the Qatari courts. And, despite International Trading's voluntary participation in the proceedings before the Qatari courts, the Court is obligated to confirm the Award under Article V(1)(e) unless it can be shown that "[t]he award . . . has been set aside . . . by a competent authority of the country in which, or under the law of which, [an arbitral] award is made." New York Convention, art. V(1)(e). No such showing has been made by DynCorp, given that the Award was issued in France, and the Paris Court of

Appeal rejected DynCorp's efforts to set aside the Award on November 4, 2010. Pet'r's Supp. Mem. at 1. The Court, therefore, is without authority to deny confirmation of the Award under Article V(1)(e).

    2.  <u>Manifest Disregard of the Law</u>

Next, DynCorp argues that "[t]he Qatari Court of Cassation has already determined, albeit in language that may not mimic the phraseology employed by [United States] courts, that the sole arbitrator acted in manifest disregard of Qatari law," thereby allowing this Court to deny confirmation of the Award on that ground. Resp'ts' Opp'n at 20. Specifically, DynCorp asserts that "when a contractual obligation is subject to competing interpretations," Qatari law requires a jurist to "search for the shared intention of the parties 'without pausing at the literal meaning of the words.'" <u>Id.</u> And DynCorp's position is that while "[t]he sole arbitrator acknowledged that he was obligated to interpret . . . the 1998 Agreement in light of the shared intention of the parties," <u>id.</u>, "the Court of Cassation expressly stated that the sole arbitrator's construction of [the Agreement] 'goes against the apparent meaning of the contract conditions' because of a 'misrepresentation of facts' that resulted in an 'error in the implementation of the law,'" <u>id.</u> at 21 (quoting <u>id.</u>, Ex. E (Judgment of the Qatari Court of Cassation) at 3)), and thus "the sole arbitrator knew what Qatari law required of him[] but . . . declined to follow that mandate," <u>id.</u> As a consequence, posits DynCorp, this Court is authorized to deny confirmation of the Award either under Article V(1)(c) of the New York Convention, <u>id.</u> at 22, or as an independent ground "[i]n addition to the bases . . . listed in Article V of the New York Convention," <u>id.</u> at 18.

The Court harbors a heavy dose of skepticism towards DynCorp's proposition that the Award can be refused confirmation under the New York Convention due to an arbitrator's alleged "manifest disregard of the law." Indeed, it would be a stretch to apply the "manifest

disregard of the law" standard to awards falling within the province of the Convention, as the roots of that standard have no grounding in the treaty. Rather, the origin of this standard dates back to the Supreme Court's decision in <u>Wilko v. Swan</u>, 346 U.S. 427 (1953), a decision that predates the enactment of the New York Convention in 1958.[7]  At issue in <u>Wilko</u> was a court's "[p]ower to <u>vacate</u> an [arbitration] award" under Section 10(a) of the FAA,[8] <u>id.</u> at 436 (emphasis added), which states that

> [i]n any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made,

---

[7] Although the New York Convention was enacted in 1958, the United States did not ratify the treaty until 1970. <u>See</u> New York Convention, 1970 WL 104417, at *5.

[8] To be clear, a proceeding to vacate or modify an arbitral award and a proceeding to confirm an award are not one in the same.  As the Court noted in another memorandum opinion issued earlier on this same date:

> [T]he purpose of a proceeding to vacate an arbitral award, which can only be held in "the country in which, or under the [arbitration] law of which, [an] award is made," is to render the award unenforceable in any other nation that is a party to the New York Convention, while a proceeding to confirm an award, which can be held in any other signatory state to the New York Convention, concerns whether an arbitral award—even one that has not been 'set aside' by a competent authority—should nonetheless be enforced in that particular state.

<u>Republic of Argentina v. BG Group</u>, Civil Action No. 08-485 (RBW), slip op. at 7 n.4 (D.D.C. Jan. 21, 2011) (internal citations omitted).

9 U.S.C. § 10(a). In describing that power, the Supreme Court noted that "interpretations of the law by . . . arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation." <u>Wilko</u>, 346 U.S. at 436-37. The Supreme Court was not clear as to which provision of Section 10(a), if any, it relied upon in reaching its conclusion; in fact, the Supreme Court recently acknowledged in <u>Hall Street Associates, LLC v. Mattel, Inc.</u>, 552 U.S. 576, 585 (2008), that the "vagueness of [this] phrasing" in <u>Wilko</u> has led to different viewpoints amongst the circuit courts as to how the "manifest disregard of the law" standard fits within the scheme of Section 10(a), with some circuit courts reading this standard to "refer[] to the § 10 grounds collectively, rather than adding to them," <u>id.</u> (citing <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 656 (1985) (Stevens, J., dissenting) and <u>I/S Stravborg v. Nat'l Metal Converters, Inc.</u>, 500 F.2d 424, 432 (2d Cir. 1974)), with other courts construing the standard to be "shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers,'" <u>id.</u> (citing <u>Kyocera Corp. v. Prudential-Bache Trade Serv., Inc.</u>, 341 F.3d 987, 997 (9th Cir. 2003)). The District of Columbia Circuit, along with several other Circuits, has interpreted this standard to be an additional ground for vacatur outside of those listed under Section 10. <u>See</u> <u>Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 481 F.3d 813, 816 (D.C. Cir. 2007) ("In addition to the grounds under the [FAA] . . . on which an arbitration award may be vacated, an award may be vacated only if it is 'in manifest disregard of the law . . . .'"); <u>Citigroup Global Mkts., Inc. v. Bacon</u>, 562 F.3d 349, 353-54 (5th Cir. 2009) ("[T]his circuit, like most other circuits, ultimately came to recognize manifest disregard of the law as a nonstatutory basis for vacatur."); <u>McCarthy v. Citigroup Global Mkts., Inc.</u>, 463 F.3d 87, 91 (1st Cir. 2006) (referring to the "manifest disregard of the law" standard as a "non-statutory standard of

review"); <u>Scott v. Prudential Sec., Inc.</u>, 141 F.3d 1007, 1017 (11th Cir. 1998) (citing "manifest disregard of the law" as a "non-statutory ground[] . . . to vacate an arbitration award").  But while the circuit courts may differ on the foundational underpinnings of the "manifest disregard of the law" standard,[9] one common theme emerges from their decisions: the standard is one that historically has been applied to actions to vacate an arbitral award under Section 10(a) of the FAA, and not proceedings to confirm arbitral awards under the New York Convention.

Moreover, the Court is not persuaded by DynCorp's logic that because Article V(1)(c) of the New York Convention, "like Section 10(a)(4) [of the FAA], . . . addresses situations where the arbitrators have exceeded their powers," Article V(1)(c) therefore authorizes the Court to refuse recognition of the Award on the basis of an arbitrator's "manifest disregard of the law," since some courts have "held that arbitrators exceed their powers when they act in manifest disregard of the law."  Resp'ts' Opp'n at 22.  "In interpreting an international treaty," the Court must remain "mindful that it is in the nature of a contract between nations to which [g]eneral rules of construction apply."  <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa</u>, 482 U.S. 522, 533 (1987) (internal citation omitted and alteration in original).  The starting point for interpreting a treaty provision, therefore, is to look at "the text of the treaty and the context in which the written words are used."  <u>Air France v. Saks</u>, 470 U.S. 392, 397 (1985).  Here, the plain language of Article V(1)(c) hardly suggests that confirmation of

_____

[9] It is not even clear whether an arbitrator's "manifest disregard of the law" remains a valid ground for a court to vacate an arbitral award.  The Supreme Court held in <u>Hall Street Associates</u> that Sections 10(a) and 11 of the FAA "provide the . . . exclusive grounds for expedited vacatur and modification," 552 U.S. at 584, but it remained silent on whether that holding impacted any of its earlier precedents.  <u>See</u> <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, ___ U.S. ___, ___, 130 S. Ct. 1758, 1768, n.3 (2010) (declining to decide whether the "manifest disregard of the law" standard survived <u>Hall Street Associates</u>); <u>Regnery Pub., Inc. v. Miniter</u>, 368 Fed. Appx. 148, 149 (D.C. Cir. 2010) (assuming, without deciding, that the "manifest disregard of the law" standard survived <u>Hall Street Associates</u>).

an arbitral award can be denied in every instance where an arbitrator's powers are exceeded. As this Court recently addressed in Republic of Argentina, slip op. at 11-12:

> Unlike Section 10(a)(4) of the FAA, which states that an award may be vacated "where the arbitrators exceeded their powers," Article V(1)(c) is not so broad; rather, Article V(1)(c) authorizes the Court to deny confirmation of an award if "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." See also Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 976 (2d Cir. 1974) (recognizing that Article V(1)(c) "tracks in more detailed form [Section] 10(d) of the Federal Arbitration Act . . . which authorizes vacating an award 'where the arbitrators exceeded their powers'" (emphasis added));[10] Mgmt. & Technical Consultants S.A. v. Parsons-Jurden Int'l Corp., 820 F.2d 1531, 1534 (9th Cir. 1987) ("[I]t is generally recognized that the [New York] Convention tracks the Federal Arbitration Act." (internal citation omitted)). Put differently, a situation where an arbitrator "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration," New York Convention, art. V(1)(c), is just one "detailed" example of a broader category of acts that can be considered an excessive use of power by an arbitrator under Section 10(a)(4) of the FAA. But arguably, it is only that specific scenario, not other actions that would be encompassed under Section 10(a)(4), that is covered under the New York Convention.

Furthermore, at least one federal circuit court has concluded that Article V does not provide a tribunal with a basis for denying confirmation of an arbitral award where an arbitrator has manifestly disregarded the law. M & C Corp. v. Erwin Behr GmbH & Co., 87 F.3d 844, 851 (6th Cir. 1996) (concluding that "Article V of the [New York] Convention lists the exclusive grounds justifying refusal to recognize an arbitral award," and that "[t]hose grounds . . . do not include . . . manifest disregard of the law"); see also Yusuf, 126 F.3d at 20 ("[T]o the extent that the Convention prescribes the exclusive grounds for relief from an award under the Convention, . . . application of the FAA's implied grounds would be in conflict, and is thus precluded.").

---

[10] Section 10(d) of the FAA was re-designated as Section 10(a)(4) in 1990. See, e.g., S. Rep. No. 101-543, at 24 (1990).

"Thus, the plain language of Article V(1)(c) does not appear to have the far reach that [DynCorp] desires." <u>Republic of Argentina</u>, slip op. at 13.

Nor does the text of the Convention suggest that an arbitrator's "manifest disregard of the law" can serve as an independent and additional ground for denying confirmation of an arbitral award. Under Article V of the Convention, the Court's refusal to confirm an arbitral award is limited to "only" those situations where a "party furnishes . . . proof that" one of the enumerated provisions applies. Nowhere in the seven enumerated provisions listed under Article V is an arbitrator's "manifest disregard of the law" a ground upon which the Court may deny confirmation of the Award; by negative implication, that basis, along with any other potential grounds for refusing confirmation of an arbitral award, are excluded. <u>See, e.g.</u>, <u>United States v. Vonn</u>, 535 U.S. 55, 65 (2002) (recognizing <u>expressio unius est exclusio alterius</u>—"that expressing one item of a commonly associated group or series excludes another left unmentioned"—as a guide for interpreting statutes). Such a narrow reading of the New York Convention comports with the context in which the Convention was enacted, as a broad construction of the Convention would do nothing more than erect additional hurdles to confirmation of arbitral awards, which in turn would contravene the "principal purpose" of the Convention, i.e., "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 520 n.15 (1974). Thus, the Court cannot envision how an arbitrator's "manifest disregard of the law" can serve as an independent ground to deny confirmation of the Award in the face of the Convention's plain language.

It should be no surprise, then, that DynCorp has failed to cite any case law where the "manifest disregard of the law" standard has been considered an express or implied basis for

denying recognition of an arbitral award under the New York Convention.  Instead, the cases that DynCorp cites (with the exception of one) all involve arbitral awards that had been rendered in the United States, thereby allowing the non-prevailing parties in those cases to seek vacatur of the award under Article V(1)(e) of the Convention.  See Int'l Thunderbird Gaming Corp. v. United Mexican States, 473 F. Supp. 2d 80, 82 (D.D.C. 2007) (Kennedy, J.), aff'd 255 Fed. Appx. 531, 532-33 (D.C. Cir. 2007) (denying petition to vacate arbitral award issued in Washington, D.C.); Esso Exploration and Prod. Chad, Inc. v. Taylors Int'l Servs., Ltd., 293 Fed. Appx. 34, 36 (2d Cir. 2008) (affirming district court's rejection of petition to vacate arbitral award issued in New York);[11] Jacada (Europe), Ltd. v. Int'l Mktg., Inc., 401 F.3d 701, 703 (6th Cir. 2005) (affirming district court's rejection of petition to vacate arbitral award issued in Michigan).  This fact is significant because in an action brought under Article V(1)(e) to set aside an arbitral award, "[t]he Convention specifically contemplates that the state in which, or under the law of which, the award is made[] will be free to set aside . . . an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." Yusuf, 126 F.3d at 23.  The applicable "domestic arbitral law[s]" in the United States to vacate an arbitral award, of course, are Section 10(a) of the FAA and any implied grounds recognized by the various federal courts.  See id.  Thus, these cases do not advance DynCorp's position that the "manifest disregard of the law" standard can be employed by the Court to deny confirmation of an arbitral award under the New York Convention; instead, these cases confirm the Court's observations above that the "manifest disregard of the law" standard has been applied by other

---

[11] Although it is not evident from Esso where the arbitration took place, the record in that case reflects that the award was in fact issued in New York.  See Final Award ¶ 12, Esso Exploration and Prod. Chad, Inc. v. Taylors Int'l Serv., Ltd., Civil Action No. 06-4401 (S.D.N.Y. Aug. 11, 2006), ECF No. 20-2 (noting that the hearings in the case "were held in New York, New York").

courts only when faced with the issue of whether vacatur of an arbitral award is appropriate under Section 10(a) of the FAA.

The one case cited by DynCorp that did not involve a petition to set aside an arbitral award under the FAA and the Convention, In re Chromalloy Aeroservices, 939 F. Supp. 907 (D.D.C. 1996) (Green, J.), is also distinguishable from this case but requires further explanation. There, a former member of this Court concluded that an arbitration prevailing party was not entitled to confirmation of the award under the Convention because the "award was made in Egypt, under the laws of Egypt, and ha[d] been nullified by [a] court designated by Egypt to review arbitral awards." Id. at 909. Judge Green, however, concluded that Article VII of the Convention allowed the prevailing party to "avail himself of an arbitral award in the manner and to the extent allowed by the law . . . of the count[r]y where such award is sought to be relied upon." Id. (emphasis added). As a result, Judge Green concluded that the prevailing party also could seek confirmation of the arbitral award under Section 9 of the FAA rather than Article IV for the Convention, see id. (citing 9 U.S.C. §§ 1-14), "unless the award is vacated, modified, or corrected as prescribed in [S]ections 10 and 11 of [the FAA]," 9 U.S.C. § 9, or "if the award was made in "manifest disregard of the law," Chromalloy, 939 F. Supp. at 910.

But that line of reasoning has no application here. Judge Green's recognition of the applicability of the "manifest disregard of the law" standard in Chromalloy hinged on the prevailing party's invocation of Section 9 of the FAA through Article VII of the Convention. Here, however, DynCorp does not, and cannot, invoke Article VII because it is not attempting to "avail" itself of an arbitral award; rather, it is only seeking to "avail" itself of the defenses recognized under Section 10 of the FAA. See New York Convention, art. VII ("The provisions of the present Convention shall not . . . deprive any interested party of any right he may have to

avail himself of an arbitral award in the manner and to the extent allowed by the law . . . where such award is sought to be relied upon." (emphasis added)).  Those defenses, as noted above, are not otherwise available to a party petitioning a court to deny confirmation of an arbitral award.  See TermoRio, 487 F.3d at 935 (quoting Yusuf, 126 F.3d at 23).  Thus, Chromalloy does not support DynCorp's position that an arbitrator's "manifest disregard of the law" is a basis upon which the Court may refuse recognition of the Award.[12]

As shown above, there is simply no support in either the text of the New York Convention or case law for DynCorp's position that an arbitrator's "manifest disregard of the law" is a valid basis upon which the Court can deny confirmation of an arbitral award.  But notwithstanding the Court's analysis in this regard, DynCorp's efforts to prevent confirmation of the Award fail for yet another reason: the record is devoid of any evidence that the arbitrator in this case actually disregarded Qatari law.  To establish that the arbitrator acted with "manifest disregard of the law," DynCorp has the burden of proving that "(1) the arbitrator[] knew of a governing legal principle[,] yet refused to apply it or ignored it altogether[,] and (2) the law ignored by the arbitrator[] was well[-]defined, explicit, and clearly applicable to the case." LaPrade v. Kidder, Peabody & Co., 94 F. Supp. 2d 2, 4-5 (D.D.C. 2000) (Sullivan, J.), aff'd 246 F.3d 702 (D.C. Cir. 2001).  Here, there is no evidence as DynCorp contends that the arbitrator failed to "search for the shared intention of the parties [by] pausing at the literal meaning of the [contractual terms]."  Resp'ts' Opp'n at 20.  In fact, not only does DynCorp concede that the

_____

[12] The undersigned member of the Court has some reservations about whether the holding of Chromalloy—specifically, that Article VII of the Convention provides another means of obtaining confirmation of an arbitral award when it has been set aside by a competent authority under Article V(1)(e)—remains valid precedent in light of the District of Columbia Circuit's decision in TermoRio.  Although the Circuit explicitly noted that it "need not decide whether the holding in Chromalloy is correct," TermoRio, 487 F. 3d at 937, it also stated in no uncertain terms that "an arbitration award does not exist to be enforced in other Contracting States if it has been lawfully 'set aside' by a competent authority in the State in which the award was made," id. at 936.  Nonetheless, the value of Chromalloy is of no moment here because even assuming the holding remains correct, that case is factually and legally distinguishable from this matter as explained above.

arbitrator acknowledged his "obligat[ion] to interpret . . . the 1998 Agreement in light of the shared intention of the parties," id., but the arbitrator's decision itself reflects his efforts to glean the parties' shared intent from the Agreement. According to the Award, the arbitrator found that Section 9.1 required the Agreement to remain in effect "for a period of sixty months from the date of signature . . . , unless and until terminated" by one of the parties thereafter, Pet'r's Mem., Ex. A (Award) at 23. Although the arbitrator acknowledged that Section 9.1 contained an "apparent inconsistency," id.—that the Agreement shall continue "unless terminated by . . . giving . . . 90 (Ninety) days prior notice expiring on or at any time after the first anniversary of the date" the Agreement was signed, Resp'ts' Opp'n, Ex. A (the 1998 Agreement) at 12—the arbitrator concluded that the two clauses "can be applied in [a] way . . . without resulting in any direct contradiction" because any notice given "after 60 months is also necessarily after the first 12 months of the contract," Pet'r's Mem., Ex. A (Award) at 24. The arbitrator also noted that "[i]f the intention of . . . the parties was" for the Agreement to be voidable after one year rather than sixty months, then "the Agreement would have been drafted and signed initially for a period of one year," with an option of an annual renewal, Pet'r's Mem., Ex. A (Award) at 24 (emphasis added). Thus, the arbitrator's analysis hardly suggests that he "paus[ed] at the literal meaning of the" contractual terms, as alleged by DynCorp, Resp'ts' Opp'n at 20; rather, the Award reflects an attempt by the arbitrator to reconcile the literal meaning of two clauses that appeared to be directly contradictory in order to discern the parties' shared contractual intent.

DynCorp also asserts that the Qatari Court of Cassation found the sole arbitrator to have acted with manifest disregard of Qatari law, Resp'ts' Opp'n at 20, but the record suggests otherwise. Nowhere in the Qatari Court of Cassation's decision did the tribunal conclude that the arbitrator "refused to apply" or "ignored" Qatari law, LaPrade, 94 F. Supp. 2d at 4-5; to the

contrary, the Qatari Court of Cassation found that the arbitrator "implement[ed]" Qatari law (albeit erroneously in that court's view) in reaching his decision. <u>See</u> Resp'ts' Mem., Ex. E (Decision of Qatari Court of Cassation) at 4 (concluding that the arbitrator's construction of the 1998 agreement was "error[oneous] in the <u>implementation</u> of the law" (emphasis added)). DynCorp's position collapses even further when taking into account the decision of the Qatari Court of Appeal, which held that the arbitrator's decision "was resolved on correct, suitable, and accepted . . . law." <u>Id.</u>, Ex. D (Decision of Qatari Court of Appeal) at 12-13. If it were truly the case that the Qatari Court of Cassation found that the arbitrator acted with "manifest disregard of the law," then the necessary implication from that conclusion is that the Qatari Court of Appeal—which this Court can safely assume is composed of jurists well-learned in Qatari jurisprudence—also "refused to apply" or "ignored" Qatari law. The Court finds such a circumstance untenable. What the Qatari Court of Appeal's affirmation of the arbitrator's decision does signify, however, is that the arbitrator's conclusions, at a minimum, were a "colorable" interpretation of the Agreement, and because the arbitrator "was arguably construing or applying the contract, [the C]ourt must defer to the arbitrator's judgment." <u>Madison Hotel v. Hotel & Rest. Emps., Local 25</u>, 144 F.3d 855, 859 (D.C. Cir. 1998) (citation and internal quotation marks omitted).

Accordingly, the Court rejects DynCorp's arguments that confirmation of the Award should be denied as a result of the arbitrator's purported "manifest disregard of the law." The New York Convention does not contain any provision that authorizes the Court to deny confirmation of an arbitral award due to an arbitrator's manifest disregard of the law. In any event, even if the Court were empowered to refuse recognition of the Award on this basis, DynCorp has failed to establish any ignorance of Qatari law, let alone a "manifest disregard of

the law," by the arbitrator in rendering his decision. DynCorp's arguments are thus entirely without merit.

## IV. Conclusion

For all the reasons discussed above, DynCorp's efforts to prevent confirmation of the Award must be rejected. Despite the Qatari Court of Cassation's conclusion that the arbitrator's construction of the 1998 Agreement contravened Qatari law, this Court is without authority to refuse recognition of the Award under Article V(1)(e) based on that ruling. Moreover, notwithstanding the distinct unlikelihood that the Court can deny confirmation of the Award where an arbitrator acts with "manifest disregard of the law," the record does not reveal any evidence suggesting that the arbitrator either "refused to apply" or "ignored" a clear principle of law. LaPrade, 94 F. Supp. 2d at 4-5. Having failed to meet "the showing required to avoid summary confirmation," Ottley, 819 F.2d at 376, the Court concludes that the Award must be confirmed, and that International Trading is entitled to damages in the amount of $1,107,764.95, along with $40,000 for costs, and interest of 5% per annum.[13]

**SO ORDERED** this 21st day of January, 2011.[14]

REGGIE B. WALTON
United States District Judge

---

[13] As of December 3, 2010, International Trading asserts that it is entitled to interest in the amount of $261,784.75. Presumably, International Trading will seek an award of interest that will include the time period between December 3, 2010, and the date of the final order confirming the Award. The parties, therefore, shall appear before the Court for a hearing at 3:00 p.m. on February 3, 2011, for the purpose of determining the appropriate amount of interest payments owed by DynCorp to International Trading as of the date of the hearing. An order to this effect will be issued contemporaneously with the issuance of this memorandum opinion.

[14] A final order will be issued at the conclusion of the February 3, 2011 hearing (1) granting International Trading's amended petition to confirm the Award; (2) denying DynCorp's cross-motion to deny confirmation of the Award, and (3) entering final judgment in favor of International Trading and against the collective DynCorp defendants in the amount of $1,107,764.95, plus $40,000 for costs, and interest to be determined at the February 3, 2011 hearing.